UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MARIE HASTINGS,

        Plaintiff,

        v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

Civil No. 06-3056-HA

OPINION AND ORDER

HAGGERTY, Chief Judge:

     Plaintiff Marie Hastings seeks judicial review of a final decision denying her application

for disability insurance benefits and supplemental social security income.  Plaintiff alleges that

she became disabled on June 12, 2000, as a result of various physical and mental disorders,

including, inter alia, two knee surgeries, gastroesophageal reflux disease (GERD), obesity,

depression, anxiety, and posttraumatic stress disorder.  She applied for disability benefits and

supplemental social security payments on February 4, 2002.  Her application was denied initially

1   - OPINION AND ORDER

and upon reconsideration.  A hearing, with plaintiff represented by counsel, was held before an

Administrative Law Judge (ALJ) on September 12, 2005.  During the one hour hearing, the ALJ

heard testimony from plaintiff and from Frances Summers, a vocational expert.  On November

22, 2005, the ALJ issued a decision concluding that plaintiff was not entitled to benefits.  This

decision became the Commissioner's final decision upon the Appeals Council's denial of review.

*See* 20 C.F.R. §§ 404.981, 416.1481, 422.210.  Plaintiff subsequently sought judicial review.

**I.      LEGAL STANDARDS**

> **1.      Five-Step Disability Analysis**

To establish an eligibility for benefits, a plaintiff has the burden of proving an inability to

engage in any substantial gainful activity "by reason of any medically determinable physical or

mental impairment" that has lasted or can be expected to last for a continuous period of not less

than twelve months.  42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential evaluation process for

determining if a person is eligible for benefits because of disability.  20 C.F.R. §§ 404.1520,

416.920; *see also Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

First, the Commissioner determines whether the claimant is engaged in substantial

gainful activity.  If the claimant is so engaged, disability benefits are denied.

Otherwise, the Commissioner proceeds to a second step and determines whether the

claimant has a medical impairment that meets the regulatory definition of "severe."  20 C.F.R. §

404.1520(a).  If the claimant lacks this kind of impairment, disability benefits are denied.  20

C.F.R. § 404.1520(c).

If the claimant is severely impaired, the Commissioner proceeds to a third step, and determines whether the impairment is equivalent to one or more impairments that the Commissioner has recognized to be so severe they are presumed to preclude substantial gainful activity.  20 C.F.R. § 404.1520(d).  These are listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing of Impairments").  If the claimant's condition meets or equals one in the Listing of Impairments, the claimant is presumed conclusively to be disabled.

If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from engaging in work that the claimant has performed in the past.  If the claimant is able to perform his or her former work, a finding of "not disabled" is made and disability benefits are denied.  20 C.F.R. § 404.1520(e).

If the claimant is unable to perform work that he or she has performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience.

In this five-step framework used by the Commissioner, the claimant has the burden of proof as to steps one through four.  However, in the fifth step, the burden shifts to the Commissioner to show there are a significant number of jobs in the national economy that the claimant can perform given his or her residual functional capacity (RFC), age, education, and work experience.  *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996).

If the Commissioner cannot meet this burden, the claimant is considered disabled for purposes of awarding benefits under the Act.  20 C.F.R. § 404.1520(f)(1).  If the Commissioner

meets this burden, the claimant must be deemed not disabled for purposes of determining

benefits eligibility.  20 C.F.R. §§ 404.1566, 404.1520(g).

    **2.**        **Quantum of Proof**

The Commissioner's decision must be affirmed if it is based on proper legal standards

and its findings are supported by substantial evidence in the record as a whole.  42 U.S.C. §

405(g); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999); *Andrews v. Shalala*, 53 F.3d 1035,

1039 (9th Cir. 1995).  Substantial evidence is more than a scintilla but less than a preponderance;

it is "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion."  *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (citation omitted).  The

Commissioner's denial of benefits is upheld even if the evidence is susceptible to more than one

rational interpretation, as long as one of the interpretations supports the decision of the ALJ.

*Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citation omitted); *Andrews*, 53 F.3d at

1039-40.

The court must weigh all of the evidence, whether it supports or detracts from the

Commissioner's decision.  *Tackett*, 180 F.3d at 1098 (quotation and citation omitted).  The

Commissioner, not the reviewing court, must resolve conflicts in the evidence, and the

Commissioner's decision must be upheld in instances in which the evidence would support either

outcome.  *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003) (citation omitted); *Reddick v.*

*Chater*, 157 F.3d 715, 720-21 (9th Cir. 1998) (citation omitted).

However, a decision supported by substantial evidence still must be set aside if the

Commissioner did not apply proper legal standards in weighing the evidence and making the

decision.  *Reddick*, 157 F.3d at 720-21.

4  - OPINION AND ORDER

II.     DISCUSSION

Plaintiff's extensive medical history is discussed at length in the ALJ's decision and in the briefs.  At the time of her hearing, plaintiff was a 57-year-old woman with a high school education.  She claims to have injured her right knee while lifting five gallon paint buckets in the paint department of the hardware store where she was employed.  She has not held a job since that time.  Her prior work experience includes work as a surveillance systems monitor.

1.      ALJ's Findings

At step one of the five-step analysis, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset of her disability.  Transcript of Record (hereinafter "Tr.") 23.

At step two, the ALJ found that plaintiff had severe physical impairments, including obesity, history of surgery to the right knee, and GERD.  However, the ALJ found that none of plaintiff's mental impairments were severe.  Tr. 23.

At step three, the ALJ found plaintiff's impairments, individually and in combination, did not meet or equal the requirements of a listed impairment.  Tr. 23.

At step four, the ALJ found that plaintiff had "a residual functional capacity to sit, stand or walk for six hours in an eight-hour day; lift 20 pounds occasionally, and 10 pounds frequently; only occasionally stoop, kneel, crouch, or crawl; she must not frequently bend where the head is lower than the stomach."  Tr. 23.  Based on this residual functional capacity evaluation, the ALJ concluded that plaintiff was still able to perform her past relevant work as a paint seller and surveillance system monitor.  Tr. 40.  The ALJ made no step five determination.

2.      **Analysis**

Plaintiff alleges numerous errors in the ALJ's decision: (1) the ALJ improperly rejected the opinions of treating physicians; (2) the ALJ improperly substituted her own opinion for those of the treating and examining doctors, and based her decision on speculation; (3) the ALJ failed to properly evaluate the combined effect of plaintiff's impairments; and (4) the ALJ based her decision on an incomplete hypothetical presented to the vocational expert.  Plaintiff asks the court to reverse and remand this case for a finding of disability and payment of benefits.

An ALJ must provide clear and convincing reasons for rejecting uncontroverted expert opinions, and must provide specific, legitimate reasons for rejecting controverted expert opinions. *Lester v. Chater*, 81 F.3d 821, 830-32 (9th Cir. 1995); *see also Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988) (clear and convincing reasons must be provided to support rejection of a treating physician's ultimate conclusions).

"Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability." *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989)).  An ALJ need not accept a treating physician's opinion that is conclusory, brief, and unsupported by clinical findings. *Tonapetyan*, 242 F.3d at 1149 (citing *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992)). However, an ALJ must give weight not only to the treating physician's clinical findings and interpretation of test results, but also to the doctor's subjective judgments. *Lester*, 81 F.3d at 832-33 (citing *Embrey*, 849 F.2d at 422).

6   - OPINION AND ORDER

Here, the ALJ rejected the opinions of two treating psychologists, Drs. William Peterson and Mark Bradshaw.  On May 12, 2004, Dr. Peterson completed an assessment of plaintiff's mental health from January 14, 2003 through May 14, 2004.  Tr. 489-502.  He opined that plaintiff met listings 12.04 (Affective Disorders) and 12.06 (Anxiety-Related Disorders), and that she met eight of the listed criteria for depressive syndrome.  Tr. 489, 492.  Dr. Peterson further found that she suffered from persistent anxiety and distress from recurrent and intrusive recollections of traumatic experience.  Tr. 494.  He concluded that her depression caused marked functional limitations in three areas and that she had experienced four or more periods of decompensation in the preceding year.  Tr. 499.  Dr. Bradshaw, on July 12, 2005, also opined that plaintiff showed marked functional limitations in two areas and that she had suffered three periods of decompensation of at least two weeks length in the last year.  Tr. 741.  He described her as having been unable to live outside of a highly supportive living environment and anticipated that she would need to be absent from work for more than four days per month.  Tr. 742.  These diagnoses by specialist treating physicians are consistent with the diagnosis offered by plaintiff's long-time primary care physician, Dr. Mary Cutler, who diagnosed plaintiff as suffering from severe depression and an anxiety disorder.  Tr. 532-39.

The conclusions reached by Drs. Peterson and Bradshaw are slightly undermined by an earlier, one-time psychological examination of plaintiff by Dr. Michael Villaneuva on September 12, 2002.  Tr. 339.  He reported that plaintiff's cognitive function results were exaggeratedly poor, that she suffered from possible depression, and noted that "[s]he may likely have dependent traits, with symptoms that become exaggerated by psychological need."  However, as the ALJ noted "[h]e cautioned that she did not necessarily lack true psychologic distress."  Tr.

7  - OPINION AND ORDER

26.  On March 25, 2003, Dr. Dorothy Anderson, a reviewing psychologist, opined that plaintiff's psychological disorders were not severe.  Tr. 360.

Although the ALJ undertook an extensive summary of the medical record, nothing in that record blunts the force of these evaluations from treating physicians who were very familiar with plaintiff.  After acknowledging the opinions of Drs. Peterson and Bradshaw, the ALJ proceeded to discount the credibility of those and all medical reports indicating that plaintiff was disabled by her various maladies.  Even if plaintiff's credibility were properly deemed suspect, that alone is not a basis to reject the opinions of her treating physicians.  The ALJ's conclusion was not based on "clear and convincing" reasons in the medical record, *Lester*, 81 F.3d at 830, nor was it accompanied by "detailed, reasoned, and legitimate rationales for disregarding the physician's findings," *Embrey*, 849 F.2d at 422.  Rather, the ALJ concluded that there was "a possible explanation for the claimant's exaggeration of symptoms, both mental and physical: drug-seeking," Tr. 34, and based on that conclusion rejected the opinions of plaintiff's treating physicians.  Notably, none of the numerous medical professionals that have examined plaintiff or reviewed her files ever concluded that plaintiff exhibited drug-seeking or malingering behavior.  The ALJ provided insufficient rationales for discounting the otherwise entirely credible opinions of Drs. Peterson and Bradshaw that plaintiff was severely mentally disabled.[1]

---

[1]  Because of this finding and the ruling on a remand for benefits, the court does not address the numerous other errors alleged by plaintiff, including the ALJ's rejection of the opinion of treating orthopedic surgeon Dr. Alan Webb based on the same drug-seeking hypothesis.

8  - OPINION AND ORDER

3.       **Remand**

In light of the ALJ's erroneous rejection of the psychological evidence presented by Drs. Peterson and Bradshaw, this court concludes that a remand is appropriate in this matter. The fourth and sixth sentences of 42 U.S.C. § 405(g) set forth the exclusive methods by which district courts may remand an action to the Commissioner. *Shalala v. Schaefer*, 509 U.S. 292, 296 (1993); *see also Melkonyan v. Sullivan*, 501 U.S. 89, 99-100 (1991).

Sentence four provides that the district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing" and is "essentially a determination that the agency erred in some respect in reaching a decision to deny benefits." *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002) (quoting 42 U.S.C. § 405(g) and citing *Jackson v. Chater*, 99 F.3d 1086, 1095 (11th Cir. 1996)). A plaintiff who obtains a sentence four remand is considered a prevailing party for purposes of attorney fees even when the case has been remanded for further administrative action. *Id*. (citing *Schaefer*, 509 U.S. at 297-302).

Conversely, remands ordered pursuant to sentence six of Section 405(g) "may be ordered in only two situations: where the Commissioner requests a remand before answering the complaint, or where new, material evidence is adduced that was for good cause not presented before the agency." *Akopyan*, 296 F.3d at 854-55 (citing *Schaefer*, 509 U.S. at 297 n. 2). Unlike sentence four remands, sentence six remands do not constitute final judgments. *Id*.

The issues presented here compel a remand under sentence four. Whether to remand under sentence four for an award of benefits, or for further proceedings, is a matter of judicial

9  - OPINION AND ORDER

discretion.  *Harman v. Apfel*, 211 F.3d 1172, 1177 (9th Cir. 2000).  The decision turns upon the

likely utility of further proceedings.  *Id.* at 1179.  Such a remand is unnecessary if the record is

fully developed and it is clear from the record that the ALJ would be required to award benefits.

*Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001).  The rule recognizes "the

importance of expediting disability claims."  *Id.* (citation omitted).  In cases in which it is evident

from the record that benefits should be awarded, remanding for further proceedings would delay

effectuating the primary purpose of the Social Security Act, which is to give financial assistance

to disabled persons because they cannot sustain themselves.  *Id.*

    The uncontroverted medical record shows that plaintiff meets the Listings of Impairments

and should be found conclusively disabled.  Further, even absent a disability on the Listings of

Impairments, the record shows that plaintiff's disability would cause her to be absent from work

four or more times per month.  Testimony from Summers, the vocational expert, indicated that

this number of absences would preclude employment with *any* employer.  Tr. 794.  It is clear

from the record that the ALJ must find the claimant disabled, and additional proceedings are

unnecessary to determine plaintiff's entitlement to benefits.  The record is fully developed, and

further proceedings "would serve no useful purpose."  *See Lester*, 81 F.3d at 834 (if evidence

that was improperly rejected demonstrates that claimant is disabled, court should remand for

payment of benefits).

    Moreover, permitting the Commissioner a further opportunity under these circumstances

to amend findings to comport with a denial of disability benefits is not in the interests of justice.

*See Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989) (if remand for further proceedings

would only delay the receipt of benefits, judgment for the claimant is appropriate).

**III.    CONCLUSION**

Based on the foregoing, this court concludes that the record is fully developed and that further administrative proceedings would serve no useful purpose.  Under the applicable standards, after giving the evidence in the record the effect required by law, plaintiff is unable to engage in any substantial gainful activity by reason of her impairments, and she is disabled under the Act beginning in June 2000.  Accordingly, the decision of the Commissioner is reversed, and this case is remanded to the Commissioner for the calculation and award of benefits to plaintiff Marie Hastings.

IT IS SO ORDERED.

DATED this  28   day of September, 2007.


      /s/   Ancer L. Haggerty
         Ancer L. Haggerty
      United States District Judge